No. 21-12571
(*consolidated with* No. 21-13198)

# United States Court of Appeals

*for the*

# Eleventh Circuit

JENNIFER DUPREE,

*Plaintiff-Appellant,*

v.

MRS. PAMELA OWENS and DEPARTMENT OF HUMAN
SERVICES,

*Defendants-Appellees.*

On Appeal from the United States District Court for the
Northern District of Georgia
Case No. 1:20-CV-4915-MLB – Honorable Michael L. Brown,
United States District Judge

## BRIEF FOR PLAINTIFF-APPELLANT

PHILIP J. BIEGLER
FRIEDMAN KAPLAN SEILER &
  ADELMAN LLP
7 Times Square
New York, NY 10036-6516
(212) 833-1100
pbiegler@fklaw.com

*Attorney for Plaintiff-Appellant*

*Dupree v. Owens and DHS*, No. 21-12571

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to Eleventh Circuit Rule 26.1, counsel for Plaintiff-Appellant Jennifer Dupree hereby certifies that the following persons and entities have or may have an interest in the outcome of this case:

1. Anand, Hon. Justin S. – U.S. Magistrate Judge, Northern District of Georgia

2. Biegler, Philip J. – Counsel for Plaintiff-Appellant

3. Brown, Hon. Michael L. – U.S. District Judge, Northern District of Georgia

4. Carr, Christopher M. – Counsel for Defendant-Appellee Department of Human Services

5. Department of Human Services – Defendant-Appellee

6. Dupree, Jennifer – Plaintiff-Appellant

7. Friedman Kaplan Seiler & Adelman LLP – Counsel for Plaintiff-Appellant

8. Owens, Pamela Mrs. – Defendant-Appellee

9. Stoff, Katherine P. – Counsel for Defendant-Appellee Department of Human Services

10. Waldbeser, Drew – Counsel for Defendant-Appellee Department of Human Services

11. Webb, Bryan K. – Counsel for Defendant-Appellee Department of Human Services

## STATEMENT REGARDING ORAL ARGUMENT

Counsel for Plaintiff-Appellant requests oral argument in this matter because this Court is without controlling precedent on a central issue presented here: whether the Eleventh Amendment bars a retaliation claim against a state for money damages under Title V of the Americans with Disabilities Act. Counsel submits that an oral discussion of the issue would aid in the decisional process.

# TABLE OF CONTENTS

**Page**

STATEMENT REGARDING ORAL ARGUMENT ...............................................i

TABLE OF AUTHORITIES .........................................................................iv

STATEMENT REGARDING ADOPTION OF BRIEFS OF OTHER
PARTIES.................................................................................................vi

STATEMENT OF JURISDICTION...................................................... vii

STATEMENT OF THE ISSUES...........................................................1

STATEMENT OF THE CASE................................................................2

    A.    Introduction ..........................................................................2

    B.    Ms. Dupree Requests an Accommodation, and DHS Terminates
        Her Employment ...................................................................3

    C.    Course of Proceedings..........................................................4

STANDARD OF REVIEW .....................................................................7

SUMMARY OF THE ARGUMENT .....................................................8

ARGUMENT ..........................................................................................9

I.     THE DISTRICT COURT PLAINLY ERRED IN DISMISSING MS.
       DUPREE'S TITLE V CLAIM AGAINST DHS AS BARRED BY
       THE ELEVENTH AMENDMENT...............................................9

    A.    Congress Unequivocally Intended to Abrogate the States'
        Eleventh Amendment Immunity Against Title V Claims..................11

    B.    The Abrogation of the States' Eleventh Amendment Immunity
        Against Title V Claims Was a Valid Exercise of Congress's
        Powers Under the Fourteenth Amendment .........................................12

        1.    Congress Sought to Enforce Both the Equal Protection
            Clause and Certain Fundamental Rights Protected by the
            Due Process Clause.................................................................14

ii

2. A History of Discrimination Supported Congress's Determination to Abrogate Eleventh Amendment Immunity Against Title V Claims ............................................17

3. Title V Is an Appropriate Response to This History of Discrimination..........................................................................18

II. ANY DISMISSAL BASED ON ELEVENTH AMENDMENT IMMUNITY SHOULD HAVE BEEN WITHOUT PREJUDICE ...............20

CONCLUSION .........................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Akins v. Fulton Cnty.*,
    420 F.3d 1293 (11th Cir. 2005) ........................................................................16

*Ass'n for Disabled Ams., Inc. v. Fla. Int'l Univ.*,
    405 F.3d 954 (11th Cir. 2005) .............................................................................7

*Bd. of Trustees of Univ. of Alabama v. Garrett*,
    531 U.S. 356 (2001).................................................................................*passim*

*City of Boerne v. Flores*,
    521 U.S. 507 (1997)...........................................................................................13

*DeMartini v. Town of Gulf Stream*,
    942 F.3d 1277 (11th Cir. 2019) ........................................................................16

*Farley v. Nationwide Mut. Ins. Co.*,
    197 F.3d 1322 (11th Cir. 1999) ..........................................................................8

*Fitzpatrick v. Bitzer*,
    427 U.S. 445 (1976)...........................................................................................12

*Gilbert v. Fla. Dep't of State*,
    855 F. App'x 501 (11th Cir. 2021) ....................................................................20

*Kimel v. Fla. Bd. of Regents*,
    528 U.S. 62 (2000)...............................................................................11, 13, 16

*Molina-Martinez v. United States*,
    578 U.S. 189 (2016)...........................................................................................19

*Nat'l Ass'n of the Deaf v. Florida*,
    980 F.3d 763 (11th Cir. 2020) .....................................................................13, 16

*Nichols v. Ala. State Bar*,
    815 F.3d 726 (11th Cir. 2016) ..........................................................................21

*Seaborn v. Fla., Dep't of Corr.*,
    143 F.3d 1405 (11th Cir. 1998) ........................................................................20

*Seminole Tribe v. Florida*,
   517 U.S. 44 (1996) ........................................................................20

*Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*,
   524 F.3d 1229 (11th Cir. 2008) ............................................3, 20, 21

*Tennessee v. Lane*,
   541 U.S. 509 (2004) ...............................................................*passim*

*United States v. Walker*,
   59 F.3d 1196 (11th Cir. 1995) .......................................................21

*Williamson v. Dep't of Human Res.*,
   572 S.E.2d 678 (Ga. Ct. App. 2002) ..............................................21

**Constitutional Provisions**

U.S. Const. amend. I ..........................................................................16

U.S. Const. amend. XI .......................................................................10

U.S. Const. amend. XIV .....................................................................12

**Statutes**

28 U.S.C. § 1291 ............................................................................. vii

28 U.S.C. § 1331 ............................................................................. vii

42 U.S.C. § 12101 ...............................................................1, 10, 18

42 U.S.C. § 12202 ....................................................................11, 12

42 U.S.C. § 12203 .............................................................10, 15, 17

O.C.G.A § 9-2-61 ............................................................................22

## STATEMENT REGARDING ADOPTION
## OF BRIEFS OF OTHER PARTIES

On July 19, 2022, this appeal was consolidated with *Battle v. Georgia Department of Corrections*, No. 21-13198 (the "Battle Appeal"). Plaintiff-Appellant hereby joins in and adopts (to the extent relevant to the issues she has raised) the legal arguments in plaintiff-appellant Dietrich Battle's opening brief in the Battle Appeal.

# STATEMENT OF JURISDICTION

Plaintiff-Appellant appeals the district court's June 29, 2021 dismissal of her claims under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq*. If Eleventh Amendment immunity does not preclude it, the district court had jurisdiction over Plaintiff-Appellant's federal claims under 28 U.S.C. § 1331.

This Court has jurisdiction over this direct appeal from final judgment of the district court pursuant to 28 U.S.C. § 1291. Plaintiff-Appellant timely noticed this appeal on July 29, 2021.

## STATEMENT OF THE ISSUES

1.      Where Congress validly abrogated Eleventh Amendment immunity with respect to retaliation claims brought against a State under Title V of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* ("ADA"), did the district court plainly err in dismissing such a Title V claim as barred by the Eleventh Amendment?

2.      Alternatively, if the Eleventh Amendment bars a plaintiff's retaliation claim against a State under Title V of the ADA, did the district court plainly err in dismissing such a claim *with* prejudice rather than *without* prejudice, as is required of dismissals for lack of subject matter jurisdiction?

3.      Where the district court dismissed a plaintiff's claim against a State under Title I of the ADA because that claim was barred by the Eleventh Amendment, did the district court plainly err in dismissing that claim *with* prejudice rather than *without* prejudice, as is required of dismissals for lack of subject matter jurisdiction?

## STATEMENT OF THE CASE

## A.    Introduction

Plaintiff-Appellant Jennifer Dupree ("Ms. Dupree") was employed by the Georgia Department of Human Services ("DHS") for less than a month before she was fired for requesting an adjusted work schedule so that she could attend medical appointments to manage her chronic medical conditions.

Ms. Dupree filed this action alleging that, as her employer, DHS (i) discriminated against her in violation of Title I of the ADA by failing to provide her with a reasonable accommodation, and (ii) retaliated against her in violation of Title V of the ADA by terminating her employment.  On DHS's motion, the district court dismissed Ms. Dupree's ADA claims, concluding that they were barred by Eleventh Amendment immunity.

But the district court acknowledged the absence of controlling authority on the issue of whether Eleventh Amendment immunity barred Ms. Dupree's Title V claim against DHS.  And, even though the dismissal was for lack of subject matter jurisdiction as a result of Eleventh Amendment immunity, the district court dismissed both of Ms. Dupree's ADA claims *with* prejudice, precluding her ability to potentially reassert those claims in a different forum.

**B. Ms. Dupree Requests an Accommodation, and DHS Terminates Her Employment**

Ms. Dupree suffers from bipolar disorder, post-traumatic stress disorder, and depression. *See* Dkt. 4 at 6.[1] She manages these chronic medical conditions by attending frequent appointments with her health professionals. *See id.* at 10.

On March 1, 2018, DHS hired Ms. Dupree to an administrative role. *See id.* Shortly thereafter, Ms. Dupree sought an accommodation under the ADA on account of her chronic medical conditions. *See id.* at 10-11. Specifically, she requested that DHS accommodate her need to attend medical appointments by adjusting her work schedule and permitting her to work at alternate times. *See id.*

DHS contacted one of Ms. Dupree's doctors to confirm her need for an accommodation under the ADA. *See id.* at 11. But the doctor misunderstood the nature of Ms. Dupree's request. *See id.* Instead of confirming Ms. Dupree's medical conditions, the doctor believed that Ms. Dupree had requested time away from work. *See id.* As a result of this misunderstanding, the doctor sent DHS a

---

[1] Citations to "Dkt. __" herein are to the district court docket. Because this Court is reviewing the grant of a motion to dismiss, the facts relevant to the decision are those in Ms. Dupree's complaint, which must be accepted as true. *See Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1233 (11th Cir. 2008) ("When defending against a facial attack [on the existence of subject matter jurisdiction], the plaintiff has safeguards similar to those retained when a Rule 12(b)(6) motion to dismiss for failure to state a claim is raised, and the court must consider the allegations in the plaintiff's complaint as true." (internal quotation marks omitted)).

form recommending that Ms. Dupree be placed on leave under the Family and Medical Leave Act. *See id.* at 11-12. DHS then called the doctor and "confirmed the recommendation" that Ms. Dupree "was not suitable for work," even though the doctor "did not state that [Ms. Dupree] was permanently and indefinitely unable to work." *Id.* at 11, 12.

Following this exchange with Ms. Dupree's doctor, DHS not only failed to provide Ms. Dupree with the requested accommodation, but also terminated her employment. *See id.* at 12.

## C.    <u>Course of Proceedings</u>

In December 2020, Ms. Dupree filed a *pro se* complaint in the Northern District of Georgia against DHS.[2] *See generally id.* Ms. Dupree alleged that DHS discriminated against her in violation of Title I of the ADA by failing to provide her with a reasonable accommodation. *See id.* at 2, 10-11.[3] She also asserted a claim for retaliation under Title V of the ADA by alleging that she had been

[2] Ms. Dupree's complaint also included an individual defendant named Pamela Owens ("<u>Ms. Owens</u>"). Through this appeal, Ms. Dupree does not challenge the district court's dismissal of her claims against Ms. Owens.

[3] In drafting her complaint, Ms. Dupree used a "*Pro Se* Employment Discrimination Complaint Form," *see id.* at 1-9, combined with several pages of allegations in narrative form, *see id.* at 10-13. Although Ms. Dupree did not place a check mark on the complaint form to indicate that she was suing for "failure to accommodate my disability," *see id.* at 6, her narrative includes allegations that DHS failed to provide her with a reasonable accommodation, *see id.* at 11.

discriminated against because of her "opposition to a practice of my employer that I believe violated the federal anti-discrimination laws . . . ." *Id.* at 6. In addition to her ADA claims, Ms. Dupree also asserted state law claims for "unfair termination/tort." *Id.* at 2.

DHS moved to dismiss the complaint, arguing that Ms. Dupree's claims under Titles I and V of the ADA were barred by the Eleventh Amendment. *See* Dkt. 14 at 4-8. DHS also argued that Ms. Dupree's claims for "unfair or wrongful termination" were not actionable in Georgia as a matter of law. *See id.* at 8-9. Ms. Dupree did not file a response to DHS's motion. *See* Dkt. 20 at 5.

A magistrate judge issued a report and recommendation ("R&R") on DHS's motion to dismiss. *See generally id.* The R&R recommended dismissal of Ms. Dupree's Title I claim because, under the Supreme Court's decision in *Board of Trustees of University of Alabama v. Garrett*, 531 U.S. 356 (2001), Title I claims brought against States or state agencies are "barred by the Eleventh Amendment." *See id.* at 11-12. The R&R similarly recommended dismissal of Ms. Dupree's Title V claim. *See id.* at 12-13. Although it acknowledged the absence of controlling precedent on whether Congress has abrogated the States' Eleventh Amendment immunity against a Title V claim, the R&R concluded that *Garrett*'s reasoning extends to Title V claims also. *See id.* Critically, the R&R recommended that both of Ms. Dupree's ADA claims be dismissed *with prejudice*,

even though Eleventh Amendment immunity (*i.e.*, subject matter jurisdiction) served as the grounds for the recommended dismissal. *See id.* at 14, 21-22. Finally, as to Ms. Dupree's state law claims, the R&R recommended that the district court decline to exercise supplemental jurisdiction and dismiss those claims without prejudice. *Id.* at 16-19.

The district court adopted the R&R. *See generally* Dkt. 25. It concluded that plain error review was appropriate because Ms. Dupree had not adequately objected to the R&R. *Id.* at 5. After entry of the R&R, Ms. Dupree had filed an untitled document with a docket entry that read: "NOTICE of Filing Amended Complaint/objections by Jennifer Dupree re 4 Complaint, 20 FINAL REPORT AND RECOMMENDATION." *Id.* But the district court stated that it did not believe this document contained objections to the R&R and, even if it did, the district court would not consider those objections because "parties filing objections to an R&R must specifically identify the findings they object to, and [Ms. Dupree] has not done so." *Id.* (internal citation omitted). The district court also struck this document from the record. *See id.* at 14.

The district court dismissed Ms. Dupree's ADA claims, finding "no plain error" in the R&R's recommendation that those claims be dismissed "with prejudice." *Id.* at 5-6, 14. It also declined to exercise supplemental jurisdiction

6

over Ms. Dupree's state law claims and dismissed them without prejudice. *See id.* at 11.

This appeal followed. *See* Dkt. 31. This Court later consolidated Ms. Dupree's appeal with *Battle v. Georgia Department of Corrections*, No. 21-13198.

## STANDARD OF REVIEW

Typically, "[t]he granting of a motion to dismiss based upon Eleventh Amendment Immunity is subject to *de novo* review." *Ass'n for Disabled Ams., Inc. v. Fla. Int'l Univ.*, 405 F.3d 954, 956 (11th Cir. 2005).

Although a party who does not object to a magistrate judge's report and recommendation "waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions," 11th Cir. R. 3-1, there is an important exception to this rule. Even "[i]n the absence of a proper objection . . . the court may review on appeal for plain error if necessary in the interests of justice." *Id.*

The exception permitting plain error review should apply here. Ms. Dupree alleges that she suffers from several serious medical conditions, including bipolar disorder, post-traumatic stress disorder, and depression. *See* Dkt. 4 at 6. Despite these medical conditions, Ms. Dupree litigated her claims in the district court *pro se*. She moved for appointment of counsel on two separate occasions, *see* Dkts. 8, 15, but both motions were denied before objections to the R&R were due. *See*

Dkts. 9, 20. Now that Ms. Dupree is represented on appeal by appointed counsel, the district court's decision should be reviewed for plain error.

Plain error exists when "an error occurred," "the error was plain," "it affected substantial rights," and "not correcting the error would seriously affect the fairness of the judicial proceeding." *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1329 (11th Cir. 1999).

## SUMMARY OF THE ARGUMENT

This Court should vacate the district court's decision on two grounds.

*First*, the district court plainly erred in concluding that Ms. Dupree's Title V claim against DHS was barred by the Eleventh Amendment. Title V of the ADA—which prohibits retaliation for opposing an act made unlawful by the ADA or for filing a grievance under the ADA—occupies a unique role in the statutory scheme. By providing a remedy against retaliation, Title V encourages the exercise of rights under *other* provisions of the ADA. Without its protections, individuals may be hesitant to seek accommodations or to oppose unlawful practices for fear of reprisal. In other words, the absence of Title V could thwart the entire purpose of the ADA because, without its remedies, individuals may decide that invoking rights under the ADA is simply not worth the risk.

As a result of this, Congress unequivocally intended to apply Title V—like all of the provisions of the ADA—against the States. It did so through an exercise

of its power to enforce the substantive guarantees of Section 1 of the Fourteenth Amendment. Although that power is not unlimited, Congress's enforcement of Title V against the States was a valid exercise of that power under this Court's and the Supreme Court's precedents. Thus, the district court's dismissal of Ms. Dupree's Title V claim against DHS should be vacated.

*Second*, any dismissal of Ms. Dupree's ADA claims as barred by the Eleventh Amendment should have been *without* prejudice. A State's proper invocation of Eleventh Amendment immunity strips the federal courts of subject matter jurisdiction. And claims dismissed for lack of subject matter jurisdiction must be dismissed without prejudice. For these reasons, the district court plainly erred in dismissing with prejudice Ms. Dupree's Title I claim. Similarly, in the event that this Court holds that Ms. Dupree's Title V claim was barred by the Eleventh Amendment, the dismissal of that claim with prejudice was also plain error.

## ARGUMENT

## I.

### THE DISTRICT COURT PLAINLY ERRED IN DISMISSING MS. DUPREE'S TITLE V CLAIM AGAINST DHS AS BARRED BY THE ELEVENTH AMENDMENT

Invoking "the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce," Congress designed

the ADA "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. §§ 12101(b)(1), (b)(4). The ADA accomplishes this purpose by "forbid[ding] discrimination against persons with disabilities in three major areas of public life: employment, which is covered by Title I of the statute; public services, programs, and activities, which are the subject of Title II; and public accommodations, which are covered by Title III." *Tennessee v. Lane*, 541 U.S. 509, 516-17 (2004).

Critical to this case, Title V contains "miscellaneous provisions," including a prohibition against retaliation:

> No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

42 U.S.C. § 12203(a).

The district court plainly erred in concluding that the Eleventh Amendment barred Ms. Dupree's claim against DHS under this anti-retaliation provision. The Eleventh Amendment renders the States immune from certain suits in federal court:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI.  Even though, by its terms, the Eleventh Amendment "applies only to suits against a State by citizens of another State," the Supreme Court has "extended the Amendment's applicability to suits by citizens against their own States."  *Garrett*, 531 U.S. at 363.

But Congress may abrogate the States' Eleventh Amendment immunity.  *See Lane*, 541 U.S. at 517.  Two predicate questions determine whether Congress has done so:  "first, whether Congress unequivocally expressed its intent to abrogate that immunity; and second, if it did, whether Congress acted pursuant to a valid grant of constitutional authority."  *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73 (2000).

Both prongs of this test are satisfied here, meaning that Congress abrogated DHS's Eleventh Amendment immunity with respect to Ms. Dupree's Title V claim.

## A.    Congress Unequivocally Intended to Abrogate the States' Eleventh Amendment Immunity Against Title V Claims

The first prong of the Supreme Court's abrogation test is easily satisfied. Congress included in the ADA a provision expressly abrogating the States' Eleventh Amendment immunity:  "A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in [a] Federal or State court of competent jurisdiction for a violation of this chapter."  42 U.S.C. § 12202.  Because a "violation of this chapter" would include a violation of Title V,

Congress intended to abrogate the States' Eleventh Amendment immunity with respect to Title V claims. *See Lane*, 541 U.S. at 510 (holding that § 12202 "easily" satisfies the first prong of the abrogation test because it "specifically provides for abrogation").

**B.** **The Abrogation of the States' Eleventh Amendment Immunity Against Title V Claims Was a Valid Exercise of Congress's Powers Under the Fourteenth Amendment**

Congress has the power to abrogate Eleventh Amendment immunity pursuant to its authority under Section 5 of the Fourteenth Amendment. *See Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976) ("[T]he Eleventh Amendment, and the principle of state sovereignty which it embodies, are necessarily limited by the enforcement provisions of § 5 of the Fourteenth Amendment." (internal citation omitted)). Section 5 authorizes Congress to enact "appropriate legislation" to enforce the substantive guarantees of Section 1 of the Fourteenth Amendment. *See Garrett*, 531 U.S. at 365. Section 1, in turn, guarantees that no State shall "deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

The Supreme Court has held that Congress's power to enforce the Fourteenth Amendment's guarantees includes the authority "both to remedy and to deter violations of rights guaranteed thereunder." *Kimel*, 528 U.S. at 81. This

means that Congress may "prohibit[] a somewhat broader swath of conduct, including that which is not itself forbidden by the Amendment's text." *Id.* Although Congress has "wide latitude" in determining what types of remedial or prophylactic legislation is appropriate, "[t]here must be a congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end." *City of Boerne v. Flores*, 521 U.S. 507, 520 (1997).

This Court analyzes whether abrogation was congruent and proportional by applying a three-step test. *See Nat'l Ass'n of the Deaf v. Florida*, 980 F.3d 763, 771 (11th Cir. 2020). The first step is to "identify which right or rights Congress sought to enforce when it enacted the ADA." *Id.* (internal quotation marks omitted). Then the Court must look to "whether there was a history of unconstitutional discrimination to support Congress's determination that prophylactic legislation was necessary." *Id.* Finally, the Court must determine "whether [the ADA provision at issue] is an appropriate response to this history and pattern of unequal treatment." *Id.*

An application of this test leaves no doubt that Congress's abrogation of Eleventh Amendment immunity with respect to Title V claims was congruent and proportional to the injury to be prevented.

1. **Congress Sought to Enforce Both the Equal Protection Clause and Certain Fundamental Rights Protected by the Due Process Clause**

When considering whether Congress validly abrogated Eleventh Amendment immunity through the various provisions of the ADA, courts consider which constitutional right is at issue, and it is the variation between the rights that is often dispositive. In *Garrett*, the Supreme Court analyzed whether Congress had validly abrogated Eleventh Amendment immunity with respect to claims under Title I. 531 U.S. at 360. In identifying "the constitutional right at issue," the Court looked only to its "prior decisions under the Equal Protection Clause." *Id.* at 365. It observed that its equal protection decisions apply the lenient standard of rational basis review to differing treatments based on disability. *See id.* at 366. Because of this, the Court held that Congress's attempt to abrogate Eleventh Amendment immunity against Title I claims exceeded its authority to enforce the Equal Protection Clause. *See id.* at 368 ("If special accommodations for the disabled are to be required, they have to come from positive law and not through the Equal Protection Clause.")

In *Lane*, by contrast, the rights that Congress sought to enforce went beyond equal protection. The issue in *Lane* was whether Congress had validly abrogated Eleventh Amendment immunity against a claim under Title II alleging that States had denied physical access to the courts. 541 U.S. at 513-14. The Supreme Court

14

contrasted the rights at issue under Title II with those that had been at issue in *Garrett*: "Title II, like Title I, seeks to enforce this prohibition on irrational disability discrimination. *But it also seeks to enforce a variety of other basic constitutional guarantees, infringements of which are subject to more searching judicial review*." *Id.* at 522-23 (emphasis added). Those other constitutional guarantees included "the fundamental right of access to the courts," which is protected by the Due Process Clause. *Id.* at 523, 533-34. The Court therefore held that "Title II unquestionably is valid § 5 legislation as it applies to the class of cases implicating the accessibility of judicial services." *Id.* at 531.

Title V is similar to Title II. Congress enacted Title V to enforce not only the Equal Protection Clause, but also certain fundamental rights protected by the Due Process Clause. The statutory text confirms this conclusion. Title V prohibits retaliation against "*any individual*" for opposing a practice made unlawful under the ADA. 42 U.S.C. § 12203(a) (emphasis added). This language is in contrast to Title I, which prohibits discrimination only against a "qualified individual." *Id.* § 12112(a). Whereas Title I prohibits discrimination against only the disabled person herself, Title V prohibits retaliation against the disabled person *and* any other person who opposes conduct that is made unlawful by the ADA. Because Title V protects this broader class of individuals who may not be disabled, it must enforce rights beyond the equal protection rights of the disabled.

Those rights include, at a minimum, the right to freedom of speech and the right "to petition the Government for a redress of grievances." U.S. Const. amend. I. Opposing an act or practice made unlawful by the ADA or making a charge under the ADA necessarily implicates both of these rights, which are fundamental. *See Akins v. Fulton Cnty.*, 420 F.3d 1293, 1300 (11th Cir. 2005) ("[T]he right to free speech is a fundamental one that warrants strict scrutiny."); *DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1288 (11th Cir. 2019) ("The right to petition the government for a redress of grievances is one of the most precious of the liberties safeguarded by the Bill of Rights, and is high in the hierarchy of First Amendment Values." (internal quotation marks omitted)).

It makes no difference if retaliation for engaging in speech protected merely by statute may not rise to the level of a constitutional violation. That is because Congress's enforcement power "is a broad power indeed," *Lane*, 541 U.S. at 518, and one that enables Congress to "prohibit[] a somewhat broader swath of conduct, including that which is not itself forbidden by the [Fourteenth] Amendment's text." *Kimel*, 528 U.S. at 81.

The fact that Title V implicates these fundamental rights means that Congress has greater power to enforce its protections against the States. *See Nat'l Assoc. of the Deaf*, 980 F.3d at 772 ("If the identified right triggers heightened

scrutiny or we deem it 'fundamental,' Congress has greater latitude to abrogate

immunity pursuant to its Section 5 powers . . . .").

### 2. A History of Discrimination Supported Congress's Determination to Abrogate Eleventh Amendment Immunity Against Title V Claims

Title V prohibits retaliation against an individual who opposes "any act or

practice made unlawful by" the ADA or who "made a charge, testified, assisted, or

participated in any manner in an investigation, proceeding, or hearing under" the

ADA. 42 U.S.C. § 12203(a). This makes Title V unique amongst the ADA

provisions in that it is the ultimate "prophylactic" legislation, encouraging

individuals—both the disabled and the not disabled—to speak up in the face of

conduct that violates the ADA or potentially infringes the constitutional rights of

the disabled. In other words, it protects and encourages speech, along with the

exercise of the right to petition the government for a redress of grievances, for the

sake of ensuring that *other* constitutional rights are guaranteed.

Because Title V occupies this unique and fundamental role in the ADA, this

Court should apply a flexible standard in determining whether its enforcement

against the States is supported by a history of discrimination. This Court should

limit its inquiry to whether Congress established a history of state discrimination

against the disabled, rather than searching for a history of discrimination against

those who have *opposed* such discrimination. Taking this approach would reflect

Title V's uniquely prophylactic purpose, which is to ensure that fear of reprisal will not chill the exercise of rights under the ADA.

Of course, there can be no doubt that Congress established a history of state discrimination against the disabled. Indeed, in *Lane*, the Supreme Court recognized that Congress had "uncovered . . . evidence . . . in the form of hundreds of examples of unequal treatment of persons with disabilities by States and their political subdivisions." 541 U.S. at 526. That evidence, "the sheer volume of" which demonstrated "the nature and extent of unconstitutional discrimination against persons with disabilities in the provision of public services," is what led the Supreme Court to hold that Congress could validly enforce Title II against the States. *See id.* at 528-29. It should also be sufficient for this Court to reach a similar conclusion with respect to Title V.

### 3.    Title V Is an Appropriate Response to This History of Discrimination

In light of the long history of State discrimination against people with disabilities, *see id.*, Congress reasonably concluded that anti-discrimination provisions alone would not be enough to accomplish the ADA's purpose of "provid[ing] a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). If individuals were hesitant to invoke the ADA's provisions for fear of retaliation, then those provisions would accomplish little. Title V solves this problem by

providing a remedy against retaliation and, in doing so, encouraging speech related to the rights protected by the ADA. Given the importance of Title V in ensuring that the other provisions of the ADA are effective against the States, there is no doubt that Title V was an "appropriate response" to the "history and pattern of unequal treatment" identified in *Lane*. 541 U.S. at 530.

*     *     *

For these reasons, Congress validly abrogated the States' Eleventh Amendment immunity against Title V claims. The district court therefore plainly erred in dismissing Ms. Dupree's Title V claim against DHS as barred by the Eleventh Amendment. This error affected Ms. Dupree's substantial rights because, had the district court not concluded that the Eleventh Amendment acted as a bar, it likely would not have dismissed her Title V claim. *See Molina-Martinez v. United States*, 578 U.S. 189, 194 (2016) (substantial rights are affected when there is "a reasonable probability that, but for the error, the outcome of the proceeding would have been different" (internal quotation marks omitted)). Given the importance of this issue, its proper resolution "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.*

Moreover, because the dismissal of Ms. Dupree's federal claims served as the grounds for the district court's decision not to exercise supplemental

jurisdiction over her state law claims against DHS, *see* Dkt. 25 at 10-11, the

dismissal of those claims should be vacated as well.

## II.

### ANY DISMISSAL BASED ON ELEVENTH AMENDMENT IMMUNITY SHOULD HAVE BEEN WITHOUT PREJUDICE

Regardless of the fate of Ms. Dupree's Title V claim, the district court

plainly erred in dismissing Ms. Dupree's Title I and Title V claims against DHS

*with* prejudice.

"An assertion of Eleventh Amendment immunity essentially challenges a

court's subject matter jurisdiction:  'The Eleventh Amendment restricts the judicial

power under Article III, and Article I cannot be used to circumvent the

constitutional limitations placed on federal jurisdiction.'" *Seaborn v. Fla., Dep't of*

*Corr.*, 143 F.3d 1405, 1407 (11th Cir. 1998) (quoting *Seminole Tribe v. Florida*,

517 U.S. 44, 72-73 (1996)).  When a federal court lacks subject matter jurisdiction,

it is powerless to render a judgment on the merits.  *See Stalley ex rel. U.S. v.*

*Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) ("A

dismissal for lack of subject matter jurisdiction is not a judgment on the merits and

is entered without prejudice."); *see also Gilbert v. Fla. Dep't of State*, 855 F.

App'x 501, 503 (11th Cir. 2021) ("[B]ecause sovereign immunity applies, the

district court lacked subject matter jurisdiction over the case, and it had no power

to render a judgment on the merits.").

Here, the R&R recommended the dismissal of both of Ms. Dupree's ADA claims against DHS *with* prejudice because "no amendment to [those] claims could overcome DHS's entitlement to [Eleventh Amendment] immunity . . . ." Dkt. 20 at 13. The district court found "no plain error" in this recommendation and adopted the R&R, *see* Dkt. 25 at 6, 14, thereby dismissing those claims with prejudice. *See id.*

This dismissal with prejudice constituted plain error. *See Stalley*, 524 F.3d at 1235 (district court's lack of subject matter jurisdiction meant it "should have dismissed the complaint *without* prejudice" (emphasis added)); *see also Nichols v. Ala. State Bar*, 815 F.3d 726, 733 (11th Cir. 2016) ("Given that the State Bar is an arm of the state entitled to Eleventh Amendment immunity, the district court properly dismissed Nichols's § 1983 action *without* prejudice for lack of subject matter jurisdiction." (emphasis added)); *United States v. Walker*, 59 F.3d 1196, 1198 (11th Cir. 1995) (stating that "[w]e can think of no plainer error" where district court allowed conviction to stand even though it "lacked subject matter jurisdiction with respect to that charge").

Correcting this error on appeal is critical because it could afford Ms. Dupree an opportunity to pursue her ADA claims against DHS in state court, where Georgia appears to have waived its sovereign immunity with respect to such claims. *See Williamson v. Dep't of Human Res.*, 572 S.E.2d 678, 681 (Ga. Ct.

App. 2002) (reversing dismissal of ADA claims against state agency because, by enacting the Fair Employment Practices Act, which "creates a right of action against the state, as an employer, for discrimination on the basis . . . [of] disability," Georgia "waived its sovereign immunity as to *state* disability discrimination claims" and therefore cannot "selectively cloak itself in sovereign immunity as to *federal* disability discrimination claims").  Ms. Dupree would have six months after dismissal without prejudice to "renew" her ADA claims in state court.  *See* O.C.G.A § 9-2-61(c) ("The provisions of subsection (a) of this Code section granting a privilege of renewal [within six months after dismissal] shall apply if an action is discontinued or dismissed without prejudice for lack of subject matter jurisdiction in either a court of this state or a federal court in this state.").

To the extent that Ms. Dupree's ADA claims are barred by the Eleventh Amendment, this Court should vacate the dismissal of those claims and remand with instructions for the district court to dismiss both of them *without* prejudice for lack of subject matter jurisdiction.

## CONCLUSION

This Court should vacate the district court's dismissal of Ms. Dupree's ADA claims against DHS because the district court plainly erred in concluding that (i) her Title V claim was barred by Eleventh Amendment immunity, and (ii) her Title I claim was due for dismissal *with* prejudice.  Because Ms. Dupree's Title V claim

should have survived dismissal, the district court also plainly erred in declining to exercise supplemental jurisdiction over, and dismissing, Ms. Dupree's state law claims against DHS.

Alternatively, even if this Court concludes that DHS enjoys Eleventh Amendment immunity against Ms. Dupree's Title V claim, this Court should vacate the dismissal of Ms. Dupree's ADA claims with instructions for the district court to dismiss both of them *without* prejudice for lack of subject matter jurisdiction.

Dated: September 28, 2022

Respectfully Submitted,

FRIEDMAN KAPLAN SEILER &
  ADELMAN LLP


*/s/ Philip J. Biegler*
Philip J. Biegler
7 Times Square
New York, New York 10036-6516
(212) 833-1100

*Attorney for Plaintiff-Appellant Jennifer Dupree*

## CERTIFICATE OF COMPLIANCE WITH RULE 32

The foregoing brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 5,125 words, excluding those parts of the brief exempted by Eleventh Circuit Rule 32-4.

The foregoing brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface, 14-point Times New Roman font, using Microsoft Word.

*/s/ Philip J. Biegler*
Philip J. Biegler

**CERTIFICATE OF SERVICE**

This is to certify that I have this day caused a copy of the foregoing **BRIEF FOR PLAINTIFF-APPELLANT** to be served upon counsel of record by filing the same with the Clerk of Court using the CM/ECF filing system which will automatically send email notification of such filing to the attorneys of record listed below.

Katherine Stoff
Attorney General's Office
40 Capitol Square SW
Atlanta, GA 30334

Drew Waldbeser
Attorney General's Office
40 Capitol Square SW
Atlanta, GA 30334

Christopher Michael Carr
Attorney General's Office
40 Capitol Square SW
Atlanta, GA 30334

This 28th day of September, 2022.

*/s/ Philip J. Biegler*
Philip J. Biegler